**SOLAR INTERNATIONAL SHIPPING AGENCY, INC., Plaintiff-Appellant,**

v.

**EASTERN PROTEINS EXPORT, INC., Defendant-Appellee.**

No. 316, Docket 85–7541.

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1985.

Decided Dec. 2, 1985.

Alfred F. Koller, Jr., New York City (Cichanowicz, Callan, Carcich & Keane, New York City), for plaintiff-appellant.

Richard E. Kummer, Roseland, N.J. (Carella, Byrne, Bain & Gilfillan, Roseland, N.J.), for defendant-appellee.

Before OAKES, NEWMAN and KEARSE, Circuit Judges.

OAKES, Circuit Judge.

In this suit for ocean freight charges indisputably owing to the plaintiff, the defense is that the charges were incurred not by the corporate defendant with whom the plaintiff had previously done business but by another corporation with the identical name as the defendant, only incorporated in a different state, and now bankrupt. The United States District Court for the Southern District of New York, Bernard Newman, Senior Judge of the United States Court of International Trade, sitting by designation, entered judgment for defendant Eastern Proteins Export, Inc. ("Eastern Proteins") (a New Jersey corporation), in a suit by Solar International Shipping Agency, Inc. ("Solar"), general agent for Yang Ming Marine Transport Corp. ("Yang Ming"). Solar had sued to recover $93,225, plus interest, arising from ocean freight charges incurred by Eastern Proteins Export, Inc., in connection with six shipments made from Wilmington, North Carolina, in the month of July, 1983. We have reversed the judgment by order entered previously for reasons that will below appear, this opinion to follow.

Paterson Tallow Company ("Paterson"), a New Jersey corporation formed in 1919, manufactures meat and bonemeal products in Jersey City, New Jersey, and has operated out of an address at 100 Caven Point Avenue, in Jersey City, since 1965. Defendant Eastern Proteins Export, Inc., is a wholly-owned subsidiary of Paterson and was formed as a Domestic International Sales Corporation ("DISC") pursuant to the Internal Revenue Code, 26 U.S.C. § 991–997 (1982), on May 10, 1978. It too operated out of the Caven Point Avenue address in Jersey City, except between 1980 and 1982 when it operated at 744 Broad Street, in Newark, New Jersey. All stock in Pa-

terson is owned by the Lakind family. Alan, Barry, Howard, and Arnold Lakind are the directors of the New Jersey Eastern Proteins corporation; its export business is run essentially by Howard, an attorney. Indeed, Howard Lakind handled all the sales, export documentation, and negotiation of letters of credit for all the corporate entities here involved, and testified as Eastern's sole witness at trial.

The New Jersey corporation was formed so that Paterson could take advantage under the Internal Revenue Code of the tax deferrals of certain profits made on export transactions by a U.S. manufacturer. The New Jersey corporation would arrange the sale of meat and bonemeal overseas to its overseas customer, and would purchase that meat and bonemeal from Paterson, which would supply the product and either invoice or give the New Jersey corporation a bill for the product. The New Jersey corporation would then invoice its overseas customer, usually through a letter of credit, collect the funds from which it would retain the freight amount due the shipping company and then pay Paterson the amount due it. The New Jersey corporation maintained its own bank account. It was, according to Lakind's testimony, "a sales DISC because it had funds running in and out of it" as opposed to a "commission DISC, which basically [is] a shell corporation."

On February 22, 1977, the Lakind family, with the same four individuals as directors, formed in North Carolina United Proteins Incorporated, principally for the purpose of manufacturing the same products manufactured by Paterson in New Jersey. This was followed on December 17, 1979, by the formation of a DISC in North Carolina, also with the same directors. This corporation operated as a commission DISC. In Howard Lakind's testimony, this means it was "just an entity. It really performed no functions. It was just a name.... [B]asically [it] was a shell corporation." However, the North Carolina DISC was given exactly the same name as the New Jersey DISC, i.e., Eastern Proteins Export, Inc. This was done, according to Lakind, be-

cause the New Jersey corporation had been established first and had generated a good reputation overseas. Indeed, according to Lakind, it had generated "a lot of good will and the products were virtually identical," so that "in order to take advantage of the good will and also to facilitate the handling of the documentation, negotiations of letters of credits [sic] without constantly getting amendments, it was thought to use the same name." The North Carolina corporation briefly maintained an office address in Sanford, North Carolina, staffed by three employees of United Proteins, but because this caused delays in receiving letters of credit in New Jersey, where all negotiations occurred, all of the documentation was soon handled out of New Jersey.

Thus, using letters of credit, bills of lading, and other documentation in connection with transactions or shipments, two DISC corporations with the identical name operated out of the New Jersey address of one of them. They also had identical telex and telephone numbers. They used the same stationery and the same forms. They had the same sales agent, who would negotiate the overseas sales orders and then determine whether shipment was to be out of New York and New Jersey and hence through defendant utilizing Paterson's product, or out of North Carolina utilizing United Proteins' product.

It should be emphasized, however, that the North Carolina DISC, while it had a bank account, never, to Lakind's knowledge, issued any checks, had no employees in North Carolina, and was operated strictly as a shell corporation. Lakind himself testified that he "never advised any customer or creditor that there were two corporations."

In respect to the specific invoices and bills of lading involved in the six shipments at issue, the shipper/exporter is listed as Eastern Proteins Export, Inc., with the Jersey City, Caven Point Avenue address from which what the parties have called the "Lakind family empire" operated. Notably, a shipper's credit agreement had been exe-

cuted on June 15, 1982, between Solar, as agent for Yang Ming, and Eastern Proteins Export, Inc., using the 744 Broad Street, Newark, New Jersey, address, with Howard Lakind signing on behalf of Eastern Proteins Export, Inc. Howard testified that he believed he signed that credit agreement on behalf of the North Carolina corporation and indeed the district court so found, but there is nothing whatsoever on the face of the document to indicate this to be the case and, indeed, the address of the corporation as signed on the document was that of the New Jersey corporation during its temporary move to Newark. Parenthetically, shipper's credit agreements ease overseas credit transactions by permitting the steamship company to release a prepaid bill of lading, with the shipper agreeing to pay the freight due within a given time, here fourteen days from the date of shipment, thus enabling the banks to have evidence that for letter of credit purposes the shipper has paid the freight.

The district court nevertheless found Solar on notice, if not having actual knowledge, of the fact that it was doing business with the North Carolina corporation. The court reached this conclusion from three documents submitted by the defendant and from the fact that United Proteins had indeed paid $2 million in freight charges to Solar for product shipped from Wilmington, North Carolina. The three pieces of documentary evidence, defendant's Exhibits J, I, and H, must be set out in some detail to ascertain their legal significance.

Exhibit J is a letter dated March 16, 1981, referring to a small balance on one shipment of fishmeal, from Solar to Eastern Proteins Export, Inc., with a Sanford, North Carolina, address and a copy going to Eastern Proteins Export, Inc. at its Jersey City address. Defendant argues, and the court found this evidence "significant," that this demonstrates that Solar knew it was doing business with the North Carolina corporation. We do not see, however, how this letter indicates such knowledge. One who does business with Eastern Proteins Export, Inc., at its New Jersey address, would logically conclude, at least

where owners and managers have not advised him to the contrary, not that there is a separate North Carolina corporation with an identical name, but rather that the New Jersey-based corporation simply has an additional address.

Exhibit I is a letter dated April 21, 1981, from Solar to Eastern Proteins Export, Inc., at its Jersey City address, with a copy to United Proteins, Inc., at Sanford, North Carolina, in connection with the balance due on a small shipment of fishmeal. Again, we fail to see the significance of sending a copy to United Proteins when it was obvious on the face of the letter that Solar was looking to Eastern Proteins Export, Inc., at Jersey City for its "earliest remittance."

Exhibit H, a letter dated May 31, 1983, from Eastern Proteins Export, Inc. on its Jersey City letterhead and signed by Howard Lakind, advises Solar that

all invoices for shipments from Eastern Proteins Export, Inc., out of Wilmington, North Carolina, should be sent to the following address:

United Proteins, Inc.

P.O. Box 1666

Sanford, North Carolina 27330

The district court also found this letter "[s]ignificant[ ]" as do we, but we find it in no way indicates the existence of an Eastern Proteins Export, Inc., in North Carolina distinct from the New Jersey-based corporation with which Solar had done business. Contrary to the appellee's brief, nothing in this letter indicates that Solar was aware of the existence of the North Carolina corporation even though from its course of dealing and this letter it knew that United might be paying for the freight on shipments out of North Carolina. Irrespective of the course of dealing, Exhibits I and J indicate that Solar was ultimately looking to Eastern Proteins in New Jersey for payment. United was never a party to any of the contracts established by the bills of lading. The shipper's credit agreement was signed by Eastern Proteins Export, Inc., not United, and Eastern was a party

to the shipping contracts while United was not. The fact that United may have made payments in no way would relieve the shipper of its contractual obligations.

Both United Proteins, Inc., and the North Carolina Eastern Proteins Export, Inc., are in the United States Bankruptcy Court for the Middle District of North Carolina. The bankruptcy judge, suggesting that Solar was taking inconsistent positions in the bankruptcy proceedings (as a creditor of United Proteins, Inc., and Eastern Proteins of North Carolina) and in this lawsuit in the Southern District of New York then on appeal (against Eastern Proteins of New Jersey), entered an order giving Solar ten days to elect either to withdraw its proof of claim in the bankruptcy proceedings or to consent to a voluntary dismissal under Fed. R.App.P. 42(b) of the appeal before our court. Because the appeal to this court was argued during that ten-day period and this court determined that reversal was required, we entered an order reversing the judgment so that Solar did not need to make such election at its peril.

What we have, in short, is the case of a defendant operating not just a shell corporation, but a shell game. It may be asked how Solar was to know that it was doing business with a North Carolina Eastern Proteins Export, Inc., when the New Jersey Corporation's address, employees, letterhead, telephone number, telex, agents, and name were all used. Only after the fact, when the bills went unpaid, did Solar learn that in the defendant's mind Solar had been doing business with a bankrupt North Carolina corporation. There simply was no way for Solar to know that when it dealt with Eastern Proteins through Harold Lakind at a New Jersey address there were in fact two separate corporations. Solar began doing business with Eastern Proteins "sometime around 1979," according to Lakind. Appellee does not assert that it did business with Solar only after the formation of the North Carolina Eastern Proteins on December 17, 1979. Solar was never informed that a second Eastern Proteins had been incorporated, and therefore it was reasonable for Solar to assume

that it continued to deal with the original corporation. Having created an identically-named corporation "to take advantage of the good will" of the New Jersey corporation, and then failing to disclose that new corporation's existence, defendant cannot now avoid legal responsibility for contracts entered through its office and personnel, and under its name. For our purposes it is enough to say that the North Carolina corporation was an undisclosed principal for which the New Jersey corporation was acting, thereby incurring liability on behalf of both corporations. Restatement (Second) of Agency §§ 186, 322 (1957).

Judgment reversed.