YANG MING MARINE TRANSPORT CORPORATION, Plaintiff,

v.

OCEANBRIDGE SHIPPING INTERNATIONAL, INC.; Laufer Freight Lines, Ltd.; Okamoto Freighters, Ltd., Defendants.

Laufer Freight Lines, Ltd., Cross–Claimant,

v.

Oceanbridge Shipping International, Inc.; Okamoto Freighters, Ltd., Cross–Defendants.

Laufer Freight Lines, Ltd., Third–Party Plaintiff,

v.

American International Cargo Service, Inc., Third–Party Defendant.

Oceanbridge Shipping International, Inc., Third Party Plaintiff,

v.

G.E. International (U.S.A.), Inc.; Phillip Morris, Inc.; British American Tobacco, Third Party Defendants.

American International Cargo Service, Cargo Service, Inc., a corporation Cross-claimant,

v.

Oceanbridge Shipping International, Inc., a corporation; G.E. International (U.S.A.), Inc., a business entity; and Philip Morris, Inc., a corporation Cross-defendants.

No. CV 97–8550 DT (SHX).

United States District Court, C.D. California.

March 23, 1999.

See also F.Supp 99–112689.

Alan Nakazawa, Mitchell F. Ducey, Cogswell Woolley Nakazawa & Russell, Long Beach, CA, for Yang Ming Marine Transport Corporation, plaintiff.

Thomas J. Ryu, Kevin S. Kim, Marc D. Goldberg, Kim & Ryu, Los Angeles, CA, for Oceanbridge Shipping International, Inc., defendant.

Frank X. Dipolito, Jeffrey B. Carra, Swain & Dipolito, Long Beach, CA, for Laufer Freight Lines Ltd., cross-complainant and third-party plaintiff.

Michael W. Lodwick, George P. Hasspais, Porter, Groff & Lodwick, A Law Corporation, Long Beach, CA, for American International Cargo Service, Inc., defendant, cross-claimant and third-party defendant.

ORDER DENYING THIRD–PARTY PLAINTIFF LAUFER FREIGHT LINES, LTD.'S MOTION FOR RECONSIDERATION.

ORDER **GRANTING IN PART AND DENYING IN PART** DEFENDANT OCEANBRIDGE SHIPPING INTERNATIONAL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST YANG MING MARINE TRANSPORT CORPORATION.

ORDER DENYING DEFENDANT OCEANBRIDGE SHIPPING INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST LAUFER FREIGHT LINES, LTD.

TEVRIZIAN, District Judge.

*Background*

**1. *Factual Summary.***

This case involves an underlying complaint filed by Plaintiff Yang Ming Marine Transport Corporation ("Yang Ming") against Defendants Oceanbridge Shipping International, Inc. ("Oceanbridge"), Laufer Freight Lines, Ltd. ("Laufer"), and Okamoto Freighters, Ltd. ("Okamoto")[1] in connection with the alleged misdescription of eighteen containerloads of goods shipped from Long Beach, California to Tokyo, Japan in July of 1997. The containers were shipped in two groups—Oceanbridge booked shipment of eight containers with Yang Ming, as carrier, and Laufer booked shipment of ten containers with Yang Ming, as carrier. All eighteen containers were said to contain cigarettes and cigars; however, upon arrival in Tokyo, all eighteen containers contained spare, used tires. This case arises under the Carriage of Goods by Sea Act, 46

---

**1.** Okamoto was dismissed by Order of This Court entered on October 19, 1998 on the grounds of lack of personal jurisdiction.

**2.** The eight Oceanbridge Containers were container nos. YMLU4260487,

---

U.S.C. § 1300 *et seq.* ("COGSA"), and includes claims of breach of contract, negligence, fraud, negligent misrepresentation, and declaratory relief.

**The following facts are undisputed:**

In or about April and May of 1997, G.E. International (U.S.A.), Inc. ("G.E."), agent for Phillip Morris Inc. and British American Tobacco, contracted with Oceanbridge to arrange for the shipment of eighteen forty-foot containers of cigars and cigarettes from the Port of Long Beach, eight to Hong Kong and ten to Tokyo, Japan. The eight Hong Kong containers were subsequently rerouted to Tokyo.

**1. *The Eight Oceanbridge Containers***

Oceanbridge issued an ocean bill of lading, booking number LBHKG–6981, identifying G.E. International (U.S.A.), Inc., on behalf of British American Tobacco, as the shipper/exporter and T.S. Shipping Company as the consignee, for shipment of eight forty foot containers:

> Shipper's Load & Count: State Express 5 5 5 Cigarettes—Filter King, 84MM, Hard Pack

(the "G.E./Oceanbridge BROOKLYN BRIDGE Bill of Lading"). The G.E./Oceanbridge BROOKLYN BRIDGE Bill of Lading refers to Oceanbridge, "As Agents For Carrier: Yang Ming Marine."

On or about May 14, 1997, Oceanbridge booked a shipment of eight containers of cargo with Yang Ming for carriage from Long Beach to Hong Kong on the vessel, the BROOKLYN BRIDGE (the "Oceanbridge Containers[2]"). The delivery destination of the eight Oceanbridge Containers was changed to Tokyo. Oceanbridge provided the particulars for the shipment of the eight containers to Yang Ming. Based on Oceanbridge's information, Yang Ming made a booking for Oceanbridge un-

| | |
|---|---|
| YMLU4296070, | INBU4822376, |
| YMLU4390533, | YMLU4391015, |
| YMLU4404350, | YMLU4445220, and |
| YMLU4503753. | |

der the designated Booking No. KCGCK9353, which stated that the shipment consisted of eight forty-foot containers of the commodity "mixed grocery", said by Oceanbridge to be 555 cigarettes.

*See* Declaration of Margaret Wang, Exhibit A. Oceanbridge provided Yang Ming with a Bill of Lading Master identifying Oceanbridge as exporter and Yang Ming as carrier, and describing, in part:

| | |
|---|---|
| 6880 Cases Said To Contain: | 96320 KGS 465.050 CCM |
| | 212347 LBS 16423 CFT |
| 8 × 40′ Footers | |
| 6880 Cases of Mixed Grocery (State Express 5 5 5) | |
| 680 Cases Per Container [sic] 12,040 KGS Per Container | |

---

*See* Decl. of Wang, Exhibit B.

Yang Ming issued a Bill of Lading No. YMLU135019515 to evidence the contract of carriage for the eight Oceanbridge Containers being shipped by Oceanbridge on board the BROOKLYN BRIDGE, based upon the particulars furnished by Oceanbridge (the "Yang Ming/Oceanbridge Bill of Lading"). The Yang Ming/Oceanbridge Bill of Lading identifies Oceanbridge as shipper, Okamoto as the consignee and notifying party, and provides, in part:

| | |
|---|---|
| 8 × 40′ Shipper's Load & Count. | 212347 LBS 96320 KGS |
| STC [3]: | 6880 CASES 16423.000 CFT 465.050 CBM |

Of Mixed Grocery (State Express 555)
555 Cigarettes Filter King 84MM
Hard Park (5 Milles)

---

*See* Decl. of Wang, Exhibit H.

On or about June 9, 1997, the eight, sealed Oceanbridge Containers were received on board the BROOKLYN BRIDGE from or on behalf of Oceanbridge. The eight Oceanbridge Containers were sealed, stuffed and loaded elsewhere before they were received on board the BROOKLYN BRIDGE by Yang Ming. Yang Ming did not participate in the loading of the cargo into the eight Oceanbridge Containers.

### 2. *The Ten Laufer Containers*

American International Cargo, Inc. ("American") is a non-vessel-operating carrier ("NVOCC [4]"), located in Long Beach,

California, which is in the business of providing ocean transportation of goods and merchandise between U.S. and foreign ports.

Oceanbridge, also a NVOCC, issued an ocean bill of lading, booking number KEGTL6471, identifying G.E. International (U.S.A.), Inc., on behalf of Philip Morris Companies, Inc., as the shipper/exporter and T.S. Shipping as the consignee, for shipment of ten forty foot containers:

Said To Contain: 9600 Marlboro Cigarettes—Standard U.S. Export, Bar Code 5, Hard Pack

(the "G.E./Oceanbridge SETO BRIDGE Bill of Lading"). The G.E./Oceanbridge SETO BRIDGE Bill of Lading refers to

---

**3.** Hereinafter, "STC" means "said to contain"

**4.** A NVOCC is a "common carrier that does not operate the vessels by which the ocean transportation is provided, and is a shipper in

its relationship with an ocean common carrier." *All Pacific Trading, Inc. v. M/V HANJIN YOSU*, 7 F.3d 1427, 1430 (9th Cir.1993) (citing 46 U.S.C.App. § 1702(17)).

Oceanbridge, "As Agents For Carrier: Yang Ming Marine TRA."

Oceanbridge contracted with American to provide transportation from Long Beach, California to Tokyo, Japan for a shipment of ten containers said to contain 9600 cases of Marlboro cigarettes. Relying on Oceanbridge's representations about the cargo in the ten containers,

American contracted with Laufer, also a NVOCC, to provide transportation of the ten containers from Long Beach to Tokyo.

American issued an ocean bill of lading to Oceanbridge, number E300256, identifying Oceanbridge as the exporter/shipper and Okamoto as the consignee, and listing the following "particulars furnished by shipper":

| 10 × 40′ | S.T.C. | 296298 LBS 22916CFT |
| | 9600 Cases Cigarettes | 16653 KGS 648.912 CB |
| | Shipper's Load and Count | |

(the "American/Oceanbridge Bill of Lading"). *See* Declaration of T. Kozlowski, Exhibit B. American claims that it did not see the cargo inside the containers and never had the containers in its possession. *Id.* at ¶ 10.

American subsequently contracted with Laufer to provide transportation of the ten containers from Long Beach to Tokyo. Laufer issued a booking report referencing American as shipper/supplier. Decl. of Hamre, Exhibit A. Laufer issued a bill of lading to American identifying American as exporter, Okamoto as consignee, and listing ten containers of "1 × 40′ Cigarettes & Cigars" (the "American/Laufer Bill of Lading"). *See* Decl. of Kozlowski, Exhibit A.

Finally, on or about June 16, 1997, Laufer booked a shipment of ten containers of cargo with Yang Ming for carriage from Long Beach to Tokyo on the vessel, the SETO BRIDGE (the "Laufer Containers[5]"). Yang Ming made a booking for Laufer under the designated Booking No.

KEGTL6471, which stated that the shipment consisted of ten forty-foot containers of the commodity "food stuff." *See* Declaration of Margaret Wang, Exhibit D[6]. Yang Ming received a request from Laufer to change the commodity classification from "food stuff" to "department store merchandise." *See* Decl. of Wang, Exhibit E. Oceanbridge provided Yang Ming with a Bill of Lading Master identifying Laufer as exporter and Yang Ming as carrier, and identifying the contents of the 10 containers as "STC of cigars & cigarettes." *See* Decl. of Wang, Exhibit F.

Yang Ming issued a Bill of Lading No. YMLU135020768 to evidence the contract of carriage for the ten Laufer Containers being shipped by Laufer on board the SETO BRIDGE, based upon the particulars furnished by Laufer (the "Yang Ming/Laufer Bill of Lading"). The Yang Ming/Laufer Bill of Lading identifies Laufer as shipper, Okamoto as consignee and notifying party, and provides, in part:

| 10 × 40′ | Shipper's Load & Count. | 296300 LBS 134400 KGS |
| | STC: 9600 CARTONS | 22915.770 CFT 648.900 CBM |
| | Of Cigars & Cigarettes | |

---

5. The ten Laufer Containers were container nos. YMLU4466433 YMLU4488279, YMLU4514212, GSTU9365860, INBU4906970, YMLU4229961, YMLU4266142, YMLU4397501, and YMLU4455110.

6. This Court overruled Laufer's objection to Exhibit D of Margaret Wang's Declaration in *its* Order dated February 8, 1999.

*See* Decl. of Wang, Exhibit I.

On or about June 23, 1997, the ten, sealed Laufer Containers were received, at Long Beach, on board the SETO BRIDGE from or on behalf of Laufer. The ten Laufer Containers were sealed, stuffed and loaded elsewhere before they were received on board the SETO BRIDGE by Yang Ming. Yang Ming did not participate in the loading of the cargo into the ten Laufer Containers.

### 3. Relevant Facts as to both the Oceanbridge Containers and the Laufer Containers

On July 5, 1997, the eight Oceanbridge Containers[7] and the ten Laufer Containers arrived in Tokyo.

According to Yang Ming, the trucker for the actual consignee for both shipments, T.S. Shipping Company ("T.S.Shipping") picked up four of the ten, sealed Laufer Containers from Tokyo Customs Ohi Container Yard, and transported them to T.S. Shipping's designated bonded warehouse where it was discovered that the containers actually contained spare, used tires instead of cigars and cigarettes.

According to Yang Ming, Japanese Customs approved T.S. Shipping's request to return the four containers, temporarily resealed, from T.S. Shipping's warehouse to Yang Ming's Tokyo container yard. Yang Ming alleges that Japanese Customs further informed Yang Ming that the remaining six containers of the Laufer Containers and all eight Oceanbridge Containers also contained tires. Okamoto, the named consignee, and T.S. Shipping, the actual consignee, allegedly rejected the entire shipment and abandoned all eighteen con-

tainers at Yang Ming's Tokyo Ohi Container Yard.

Yang Ming alleges that it unsuccessfully attempted to dispose of the tires in Tokyo. On or about September 1, 1997, Yang Ming shipped nine of the Laufer Containers to Hong Kong on board the M/V NEWPORT BRIDGE, and one of the Laufer Containers and all eight of the Oceanbridge Containers to Hong Kong on board the M/V MING PLENTY. Decl. of Sato, Exhibit F. In disposing of the spare tires in the eight Oceanbridge Containers, Yang Ming claims to have incurred charges[8] totaling $44,401.23. In disposing of the spare tires in the ten Laufer Containers, Yang Ming claims to have incurred charges totaling $67,348.35.

### 2. Procedural History.

On November 20, 1997, Yang Ming filed a Complaint for (1) Breach of Contract, (2) Violation of COGSA (3) Negligence, (4) Fraud, (5) Negligent Misrepresentation, and (6) Declaratory Relief against Oceanbridge, Laufer and Okamoto (the "Complaint") with United States District Court Judge Dickran Tevrizian.

On January 5, 1998, Laufer filed an Answer to Complaint and Cross–Claim against Oceanbridge and Okamoto for (1) Breach of Contract and Indemnity against Okamoto and (2) Equitable Indemnity Against Oceanbridge and Okamoto.

On January 5, 1998, Laufer filed a Third–Party Complaint pursuant to Federal Rule of Civil Procedure 14(c) against American International Cargo Service, Inc. for Indemnification (the "Laufer Third Party Complaint").

---

**7.** The Oceanbridge Containers first arrived in Hong Kong on board the BROOKLYN BRIDGE, and were subsequently shipped from Hong Kong to Tokyo on board the M/V MING SOUTH, Voyage No. 719E.

**8.** As to both the Oceanbridge Containers and the Laufer Containers, Yang Ming claims to

have incurred (1) demurring charges while the containers remained in Tokyo, (2) shifting charges in Tokyo, (3) customs clearance charges in Tokyo, (4) ocean freight charges from Tokyo to Hong Kong, and (5) terminal handling charges in Hong Kong.

On January 8, 1998, Oceanbridge filed a Third Party Complaint against G.E. International (U.S.A.), Inc. for (1) Indemnity and Contribution and (2) Declaratory Relief. On February 18, 1998, Oceanbridge filed a First Amended Third Party Complaint adding Phillip Morris, Inc. and British American Tobacco as Defendants (the "Oceanbridge Third Party Complaint").

On February 24, 1998, American International filed a Cross–Claim against Oceanbridge, G.E. International and Phillip Morris for (1) Intentional Misrepresentation, (2) Negligent Misrepresentation, (3) Indemnification, (4) Contribution, and (5) Declaratory Relief (the "American International Cross–Claim").

On April 7, 1998, this action was reassigned to United States District Court Judge Margaret M. Morrow. On April 9, 1998 Judge Morrow entered an order of self-recusal on the grounds that Judge Morrow owns stock in Cross–Defendant and Third–Party Defendant Phillip Morris, Inc. On April 16, 1998, this action was re-transferred from the docket of Judge Morrow back to the docket of Judge Tevrizian.

On September 8, 1998, Defendant Okamoto filed a Motion to Dismiss Plaintiff Yang Ming's Complaint for Lack of Personal Jurisdiction, which was granted by this Court on October 19, 1998.

On January 15, 1999, pursuant to stipulation by the parties, this Court entered an order dismissing without prejudice Third Party Defendant Phillip Morris from the Oceanbridge Third Party Complaint.

On January 15, 1999, Plaintiff Yang Ming filed a Motion for Partial Summary Judgment as to Yang Ming's first claim for relief for breach of contract and second claim for relief for violation of the COGSA alleged in Yang Ming's Complaint against remaining Defendants Oceanbridge and Laufer, which was denied by this Court on February 8, 1999.

On January 19, 1999, American International filed a Motion for Summary Judgment Against Yang Ming Marine Trans-port Corporation, which was granted by this Court on February 8, 1999.

On January 19, 1999, American International also filed a Motion for Summary Judgment Against Laufer Freight Lines, Ltd., which was granted by this Court on February 8, 1999.

On January 22, 1999, this Court entered a Notice of Dismissal Without Prejudice of Cross–Defendant Phillip Morris, Inc. from the American International Cross–Claim.

On February 23, 1999, this Court granted Oceanbridge's Ex Parte Application for an Order Extending Time to File Motions for Summary Judgment.

On February 23, 1999, Laufer filed a Motion for Reconsideration of this Court's Order Granting the Motion of Third–Party Defendant American International Cargo Service, Inc. for Summary Judgment Against Third–Party Plaintiff Laufer Freight Lines, Ltd.

On February 24, 1999, Oceanbridge filed a Motion for Partial Summary Judgment Against Yang Ming Marine Transport Corporation. On that same date, Oceanbridge also filed a Motion for Summary Judgment Against Laufer Freight Lines, Ltd.

Laufer's motion for reconsideration and Oceanbridge's two motions for summary judgment are before this Court today.

### Discussion

### 1. *Standard.*

#### A. *Motion for Reconsideration*

Rule 59(e) of the Federal Rules of Civil Procedure provides that a "motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e). According to Local Rule 7.16 of the Local Rules of the Central District of California, a motion may be made only on the following grounds:

(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsid-

eration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

### B. *Motion for Summary Judgment.*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56. The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *See id.;* Fed.R.Civ.P. 56(e).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. *See Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, mere disagree-

ment or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See Harper v. Wallingford,* 877 F.2d 728 (9th Cir.1989); *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

On a motion for summary judgment, admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. Fed.R.Civ.P. 56(e). Declarations on "information and belief" are inappropriate to demonstrate a genuine issue of fact. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

### 2. *Analysis.*

#### A. *Laufer's Request That This Court Reconsider And Set Aside Its February 8, 1999 Order Granting Summary Judgment In Favor Of American Is Denied.*

■ On February 8, 1999, this Court granted summary judgment in favor of American as to Laufer's indemnity claim against American alleged in its Third–Party Complaint after concluding that American was not a "Merchant" under the American/Laufer Bill of Lading. Laufer urges this Court to reconsider this decision on the grounds that courts interpret the terms "shipper" and "exporter" synonymously and, thus, American, while labeled "exporter" in the American/Laufer Bill of Lading, should be considered a shipper and fall within the Merchant definition therein. This Court explained in its previous Order that because American never had possession of the ten Laufer Containers, the American/Laufer Bill of Lading specifically identified American as "exporter" and not "shipper," and Laufer provided "no authority to suggest that an 'exporter' has the same meaning as a 'shipper,'" summary judgment in favor of American

was merited. Laufer's present motion for reconsideration is just a second attempt to present the same issue to this Court, with the exception that Laufer *now* attempts to direct this Court to authority to support its position. This Court is unpersuaded by Laufer's argument and questions the grounds upon which Laufer brings its current motion. As Oceanbridge asserts in its Opposition, the February 8, 1999 decision should stand because Laufer neither raises any new facts or law which were unavailable at the time of its earlier motion for summary judgment nor points to evidence which suggests that this Court did not consider these same arguments earlier. This is a mere attempt by Laufer to reargue its position by directing this Court to additional case law and an agency argument which Laufer clearly could have made earlier, but did not. This is not the purpose of motions for reconsideration under Rule 59(e) and Local Rule 7.16. Despite this fact, this Court addresses and rejects the merits of Laufer's claims.

■ Bills of lading are considered "contracts of carriage" between a shipper and a carrier and, "as contracts of adhesion, are 'strictly construed against the carrier.'" *C–ART, Ltd., v. Hong Kong Islands Line America, S.A.*, 940 F.2d 530, 532 (9th Cir.1991). Clause 2(c) of the American/Laufer Bill of Lading defines Merchant as "the shipper, the consignee, the receiver, the holder of this bill of lading, the owner of the Goods or person entitled to the possession of the Goods and the servants or agents of any of these[9]." As this Court explained in its previous Order, each bill of lading at issue in this case is construed as a *separate* contract.

■ Laufer and American are both NVOCCs. "An NVOCC is an intermediary between the shipper of goods and the operator of the vessel that will carry the goods." *All Pacific Trading Inc. v. M/V HANJIN YOSU*, 7 F.3d 1427, 1429 (9th

Cir.1993). An NVOCC is a " 'common carrier that does not operate the vessels by which the ocean transportation is provided, and is a *shipper* in its relationship with an ocean common carrier.'" *Id.* at 1430 (citing 46 U.S.C.App. § 1702(17)). "Conversely, an NVOCC is considered a *carrier* in its relationship with the shipper of the goods." *Id.* Applying this definition, the original shipper of the ten Laufer Containers, G.E., received an original bill of lading from Oceanbridge, an NVOCC, which may be considered a carrier in its relationship with G.E. Thereafter, Oceanbridge contracted with American, as NVOCC, and American, in turn, contracted with Laufer, as NVOCC, who finally contracted with the shipper, Yang Ming. A separate bill of lading was issued in each instance, none of which named the owner of the cargo, G.E. Thus under each of these subsequent NVOCC bills of lading, the NVOCC can be considered a "shipper" in its relationship with the ocean common carrier, Yang Ming. It is unclear, however, how courts construe the relationship between two NVOCCs.

Laufer proffers that American is the shipper and that Laufer acted only as an intermediary or agent between American and Yang Ming. However, if Laufer contends that it is only an intermediary, it does not stand to reason that American acted in a different capacity. Laufer misconstrues the chain of events that led to the shipment of the ten Laufer Containers. This Court rejects Laufer's interpretation that American provided goods through Laufer to Yang Ming, the carrier. It is undisputed that American did not stuff, load or seal the Laufer Containers, and never had possession of the Laufer Containers. *See* Decl. of Kozlowski, Exhibit B. Nor did Laufer. However, unlike the Yang Ming/Laufer Bill of Lading, the American/Laufer Bill of Lading was issued by Laufer and specifically referred to

---

**9.** This Merchant definition is consistently used in all of the bills of lading at issue in this case.

American only as "exporter" with no other explanation or qualification. As a result, strictly construing this bill of lading, this Court opines that American is not the "shipper" as contemplated under COGSA and Ninth Circuit authority and does not fall within the Merchant definition. Laufer suggests that American admitted otherwise in oral arguments before this Court on February 8, 1999. However, American only admitted ninth circuit case law that "an NBOCC [sic] is a shipper in relation to someone to whom it ... provides goods." *See* Decl. of Dipolito, A–17. It did not make any direct admissions as to itself, and in the present case, as stated above, American did not actually provide the goods to Laufer. More importantly, 46 U.S.C.App. § 1702(17) defines an NVOCC as a "shipper in its relationship with an ocean common carrier." The Ocean Common Carrier is defined as the "vessel-operating common carrier," Yang Ming in our case. 46 U.S.C.App. § 1702(18). Thus, as a matter of law, American is not automatically a shipper in relationship with another NVOCC. Laufer points to no authority which suggests that this Court should ignore the face of the American/Laufer Bill of Lading contract itself.

Laufer's newly cited case authority is also totally unavailing. None of its cases address whether the terms "shipper" and "exporter" should be used synonymously in the context of construing a bill of lading. In fact, not one case referred to a party only as "exporter" yet proceeded to treat such party as a shipper. *See e.g., Solar International Shipping Agency, Inc. v. Eastern Proteins Export, Inc.,* 778 F.2d 922, 923 (2nd Cir.1985) (bills of lading referred to Eastern Proteins Export, Inc. as shipper/exporter); *Marine Transportation Services Sea–Barge Group, Inc. v. Python High Performance Marine Corp.,* 16 F.3d 1133, 1136 (11th Cir.1994) (bill of lading named Python as exporter/shipper); *Farrell Lines, Inc. v. Columbus Cello–Poly Corp.,* 1998 AMC 334, 336 (S.D.N.Y.1997) (bill of lading lists UTECO as shipper/exporter); *Insurance Company of North America v. Blue Star (North America), Ltd.,* 1997 AMC 2434, 2436 (S.D.N.Y.1997) (face of bill of lading named Cummins Engine Company as shipper/exporter); *Ariel Maritime Group, Inc. v. Zust Bachmeier of Switzerland, Inc.,* 762 F.Supp. 55, 1991 AMC 2048 (S.D.N.Y.1991) (face of bill of lading contained a box labeled shipper/exporter and named "Zuest [sic] & Bachmeier New York as agents for Ets. V. Fringhian ... Marseille/France"). After careful examination of these cases, this Court is convinced that American is not a shipper under the American/Laufer Bill of Lading. Unlike *all* of the bills of lading in Laufer's case authority, the American/Laufer Bill of Lading names American as "exporter," not "shipper/exporter." Strictly construing this document, as this Court opines is proper, there is no basis for finding that American is a shipper. Further, unlike the *Ariel Maritime* case, Laufer did not draft the American/Laufer Bill of Lading to restrict American's role as an agent for Oceanbridge or any other party. The parties, given the contract definition of "Merchant" contained within the bill of lading document, were free to draft the bill of lading to make these distinctions. They did not. Therefore, Laufer clearly stretches the significance of these cases.

American cannot be considered a shipper within the four corners of the American/Laufer Bill of Lading. Therefore, this Court concludes that its decision that American is not a Merchant under the American/Laufer Bill of Lading must stand. As such, Laufer is not entitled to recover indemnity from American, and Laufer's motion for reconsideration of this issue is **denied.**

**B. *Oceanbridge's Pending Motions for Summary Judgment Against Both Yang Ming and Laufer.***

Oceanbridge asks this Court to grant summary judgment in its favor as against Yang Ming, under the Yang Ming/Ocean-

bridge Bill of Lading, and as against Laufer [10] under the Yang Ming/Laufer Bill of Lading which is traced back to Oceanbridge through the chain of the Oceanbridge/American Bill of Lading and the American/Laufer Bill of Lading. Oceanbridge insists that because both the G.E./Oceanbridge BROOKLYN BRIDGE Bill of Lading and the G.E./Oceanbridge SETO BRIDGE Bill of Lading identified G.E. as shipper, and because G.E. stuffed and sealed the cargo into the Oceanbridge Containers and the Laufer Containers, G.E. acted as the original shipper and should be the only liable party to Yang Ming. In essence, Oceanbridge asks to be removed from the chain of parties which may be responsible to indemnify Yang Ming. This Court will address Oceanbridge's summary judgment motions against Yang Ming and Laufer in turn.

## 1. Oceanbridge's Motion for Partial Summary Judgment as against Yang Ming is granted in part and denied in part.

In its February 8, 1999 Order, this Court found that Oceanbridge was a shipper, and thus a Merchant, under the Yang Ming/Oceanbridge Bill of Lading as to the eight Oceanbridge Containers, and that Yang Ming had satisfied the first two elements of the *Atlantic Overseas Corp. v. Feder*, 452 F.Supp. 347, 351 (S.D.N.Y.1978) indemnity test—namely, that Oceanbridge breached its warranty to Yang Ming as to the accuracy of the particulars of the eight Oceanbridge Containers and no defenses existed. This Court concluded, however, that Yang Ming was not entitled to summary judgment for indemnity against Oceanbridge (and Laufer) because Yang Ming failed to adequately establish that its damages' prayer for indemnity was reasonable.

Oceanbridge now comes before this Court to seek partial summary judgment as against Yang Ming regarding its breach

of contract and violation of COGSA claims as to the ten Laufer Containers, and as to Yang Ming's claims for negligence, fraud, and negligent misrepresentation regarding both the Laufer Containers and the Oceanbridge Containers.

a. *Summary judgment in favor of Oceanbridge as to Yang Ming's breach of contract and violation of COGSA claims against Oceanbridge is warranted.*

■ Oceanbridge contends that Yang Ming's breach of contract claim against Oceanbridge regarding the ten Laufer Containers is improper because there is no underlying contract between Oceanbridge and Yang Ming as to the Laufer Containers. Oceanbridge further argues that COGSA liability cannot extend to it regarding the ten Laufer Containers because section 1303(5) requires a *shipper* to indemnify a carrier for liability due to a shipper's misdescription of cargo's particulars, and, according to Oceanbridge, it is not a "shipper" as to the Laufer Containers. Yang Ming does not oppose Oceanbridge's motion in so far as its claims for inaccuracies of the particulars made in the Yang Ming/Laufer Bill of Lading regarding the ten Laufer Containers do not extend to Oceanbridge. This Court agrees with the position taken by Oceanbridge on these claims.

The ten Laufer Containers were shipped pursuant to the Yang Ming/Laufer Bill of Lading. There was no direct contractual relationship between Oceanbridge and Yang Ming as to the ten Laufer Containers. As stated above, an NVOCC is a shipper in its relationship with the ocean carrier. 46 U.S.C.App. § 1702(17). However, Oceanbridge, as NVOCC, never entered into a bill of lading with the ocean carrier Yang Ming as to the ten Laufer Containers. This Court recognizes that Oceanbridge did define itself as "agent for

---

**10.** As noted above and in its Order dated February 8, 1999, this Court concluded that, in the event that Yang Ming is successful on its damages' prayer for indemnity as against

Laufer regarding the ten Laufer Containers, Laufer, and not American, is liable under the American/Laufer Bill of Lading.

carrier Yang Ming Marine, TRA" in the two G.E./Oceanbridge Bills of Lading, however, no bill of lading contract directly between Oceanbridge and Yang Ming exists as to the Laufer Containers under which Oceanbridge could be directly held as a "shipper." Further, under COGSA, 46 U.S.C.App. § 1303(5), a *"shipper* shall indemnify the carrier against all loss, damages, and expenses arising or resulting from inaccuracies in such particulars," however there is no suggestion that a carrier may recover from an agent of the carrier (assuming such a construction were adopted by this Court). Construing each bill of lading herein as a separate contract, this Court rejects Laufer's assertion that Oceanbridge may be considered a "Merchant" under the Yang Ming/Laufer Bill of Lading.

Therefore, this Court grants summary judgment in favor of Oceanbridge as to Yang Ming's first claim for breach of contract and second claim for violation of COGSA because there is no underlying bill of lading contract as between Oceanbridge and Yang Ming in connection with the ten Laufer Containers.

b. *Summary judgment in favor of Oceanbridge as to Yang Ming's negligence claim is partially granted, but as to Yang Ming's negligent misrepresentation claim is denied.*

Next, Oceanbridge contends that Yang Ming's third claim for negligence and fifth claim for negligent misrepresentation must fail because Yang Ming did not sustain any physical damages. Yang Ming counters that pursuant to the ancient case *Hadley v. Baxendale,* (1854) 156 Eng.Rep. 145., breach of contract damages are applicable to contracts of carriage where the damages are reasonably foreseeable. This Court disagrees with Oceanbridge.

■ First, this Court notes that Yang Ming's negligence and negligent misrepresentation claims are not breach of contract claims, as contemplated in *Hadley v. Baxendale,* but instead are tort claims. Generally, "there is no claim in maritime tort for economic damages without actual physical injury." *Channel Star v. So. Pacific Transp. Co.,* 77 F.3d 1135, 1138 (9th Cir. 1996) (citing *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927) (prohibiting recovery in the maritime field for purely economic loss unaccompanied by physical damage)). However, Yang Ming's negligence and negligent misrepresentation claims arise under California tort law not maritime tort law.

■ To establish negligence under California law, plaintiff must establish (1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) injury proximately or legally caused by that breach, and (4) damage to plaintiff. *Hoyem v. Manhattan Beach School Dist.* (1978) 22 Cal.3d 508, 514, 150 Cal.Rptr. 1, 585 P.2d 851. Yang Ming's negligence claim against Oceanbridge (as well as against Laufer) asserts improper "packing and stuffing containers with spare tires instead of cigars and cigarettes" and "incorrectly stating the nature and particulars of the cargo." *See* Complaint, ¶¶ 28–29. In regards to the alleged negligence for improper "packing and stuffing," it is undisputed that Oceanbridge did not seal or stuff the Oceanbridge Containers or the Laufer Containers. *See* Decl. of Jun, ¶¶ 13, 17. Thus, summary judgment in favor of Oceanbridge as to the negligent "packing and stuffing" allegations is warranted.

■ On the other hand, summary judgment as to Oceanbridge's alleged negligent description of the cargo's particulars is not warranted on this motion. While this Court questions whether an NVOCC generally owes a legal duty of care towards the carrier, in both the G.E./Oceanbridge BROOKLYN BRIDGE Bill of Lading and the G.E./Oceanbridge SETO BRIDGE Bill of Lading, Oceanbridge specifically identified itself as "Agents for Carrier: Yang Ming Marine." Therefore, although this claim is duplicative of Yang Ming's negli-

gent misrepresentation claim discussed below, this Court concludes that Yang Ming's third claim for negligence as to Oceanbridge's description of the cargo's particulars may survive Oceanbridge's present motion for summary judgment.

To establish a claim of negligent misrepresentation, a plaintiff must satisfy the same elements as required by a fraud claim, absent the element of intent. *See Lacher v. Superior Court* (1991) 230 Cal. App.3d 1038, 1046–1047, 281 Cal.Rptr. 640. Yang Ming's negligent misrepresentation claim, like its fraud claim, alleges misrepresentations to Yang Ming regarding the contents of the Oceanbridge Containers and the Laufer Containers which induced Yang Ming to issue the Yang Ming/Oceanbridge Bill of Lading and the Yang Ming/Laufer Bill of Lading. For the same reasons as set forth in Part c below, Oceanbridge is not entitled to summary judgment as to Yang Ming's fifth claim for negligent misrepresentation.

> c. *Summary judgment in favor of Oceanbridge as to Yang Ming's fraud claim is not warranted.*

■ Finally, Oceanbridge contends that Yang Ming's fourth claim for fraud cannot stand because Oceanbridge had no connection to the particulars represented in the Laufer Bill of Lading, and Yang Ming's evidence of an intent by Oceanbridge to defraud Yang Ming as to the particulars of the shipments is negated by the Yong Kyu Jun Declaration. This Court disagrees.

Summary judgment is improper where there is a material issue of fact in disputed by the parties. Here, Oceanbridge's argument hinges on its insistence that the "ten [Laufer] containers were delivered directly from G.E.'s facility to the M/V SETO BRIDGE" and that "Oceanbridge was nev-

er actually in possession of the ten containers at any time" and that "No one at Oceanbridge ever saw the contents of those ten containers." Oceanbridge's Motion for Summary Judgment Against Laufer, P. 5: 15–19. On the other hand, Laufer insists that Oceanbridge arranged for trucking transportation of the ten empty containers to G.E.'s facility for loading, and then arranged for trucking transportation of the ten sealed Laufer Containers from G.E.'s facility to the Port of Long Beach. *See* Laufer's Opposition to Oceanbridge's Partial Motion for Summary Judgment Against Yang Ming, p. 3: 15–23.

The essential elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance and damages. *Bank of the West v. Valley Nat'l Bank of Arizona,* 41 F.3d 471, 477 (9th Cir.1994) (quoting *Hackethal v. National Casualty Co.* (1987) 189 Cal. App.3d 1102, 234 Cal.Rptr. 853). Oceanbridge insists that the Declaration of its President, Yong Kyu Jun, supports its position that the Oceanbridge Containers and the Laufer Containers were delivered directly from G.E.'s facilities to the SETO BRIDGE and BROOKLYN BRIDGE, respectively, and were never in the possession of Oceanbridge. *See* Declaration of Yong Kyu Jun, ¶¶ 13, 17 [11]. Oceanbridge claims that it merely received the particulars from G.E. and communicated them to American (as to the Laufer Containers) and Yang Ming (as to the Oceanbridge Containers), but had no knowledge of the contents of the containers. Thus, according to Oceanbridge, Yang Ming could not rely upon any representations made by Oceanbridge.

However, the evidence raises a genuine issue of fact as to Oceanbridge's connec-

11. Yang Ming and Laufer object to paragraphs 13 and 17 of Jun's declaration on the grounds of lack of personal knowledge and inadmissable hearsay under Federal Rules of Evidence 802 and 805. This Court overrules these objections. As President of Oceanbridge, Jun has the requisite personal knowledge to speak to Oceanbridge's handling of the containers at issue. Further, Jun's statements that "Oceanbridge never saw the cargo inside the containers and never had the containers in its possession. It simply issued its bill of lading to G.E. ...." do not constitute hearsay statements as contemplated in Rule 801(a).

tion with the Laufer Containers and the Oceanbridge Containers. In Jun's *own* declaration submitted to this Court[12] in support of Oceanbridge's Opposition to Yang Ming's Partial Motion for Summary Judgment decided on February 8, 1999, Jun declared that, while Oceanbridge did not seal or stuff the eight Oceanbridge Containers, Oceanbridge *took possession* of them by picking them up from G.E.'s facility and delivering them to the BROOKLYN BRIDGE. *See* Decl. of Jun dated January 26, 1999, ¶¶ 9–10. Jun specifically stated that "No person at Oceanbridge ever saw the cargo inside the containers as the containers had been stuffed *prior to Oceanbridge taking possession of them.*" Decl. of Jun dated January 26, 1999, ¶ 10. This Court specifically noted this statement in footnote 13 of its February 8, 1999 Order. In its opposing papers to the earlier motion, Oceanbridge again stated that "When Oceanbridge received the [Oceanbridge] containers for delivery, they were sealed with the original seal and they remained sealed the entire time they were in the *possession* of Oceanbridge." Memorandum of Points and Authorities dated January 26, 1999, p. 5: 21–25. Suddenly, in what appears to be an "about face" in the present Motion, Jun now insists that Oceanbridge *never* had possession of the Oceanbridge Containers or the Laufer Containers. Therefore, Oceanbridge's assertion that "it had no ·connection to Yang Ming with regard to the SETO BRIDGE shipment" is called into question by its own evidence, which raise serious concerns to this Court. Notably, on the face of both G.E./Oceanbridge Bills of Lading, Oceanbridge acknowledges that it is acting "as agents for carrier Yang Ming Marine." *See* Decl. of Jun, Exhibit A. Oceanbridge also issued an Invoice to G.E. for trucking charges totaling $2,000 for containers delivered to the SETO BRIDGE, the Laufer Containers' vessel.

*See* Declaration of Frank X. Dipolito in Support of Laufer's Opposition to Oceanbridge's Motions, Exhibit C. Additionally, in an Indemnity Agreement dated October 8, 1997 between Okamoto and Oceanbridge, Oceanbridge indemnified Okamoto from any liability which could result from Yang Ming's anticipated claims as to *both* the Laufer Containers and the Oceanbridge Containers. *See* Decl. of Dipolito dated January 25, 1999 filed in connection with Laufer's Opposition to Yang Ming's Motion for Partial Summary Judgment, Exhibit D.

As to the Oceanbridge Containers, this Court already ruled in its February 9, 1999 Order that Oceanbridge had breached its warranty to Yang Ming as to the particulars of the eight Oceanbridge Containers. *See* Order, p. 22: 15–21. This Court noted in footnote 13 of its February 9, 1999 Order that Oceanbridge appears to be the one common link to the eighteen containers at issue. Oceanbridge was the prime contracting party with G.E. It *choose* to specifically list itself as "agent for carrier Yang Ming" on both G.E./Oceanbridge bills of lading as to the Laufer Containers and the Oceanbridge Containers. And, finally, it appears to have been the transporting party of the containers to their respective vessels.

Therefore, this Court concludes that a genuine issue of fact remains as to Oceanbridge's contact with the Oceanbridge Containers and the Laufer Containers. Because Oceanbridge has not shown that Yang Ming's fraud claim has no basis, this Court denies Oceanbridge's motion for summary judgment as to Yang Ming's fraud claim.

d. *Summary judgment in favor of Oceanbridge as to Yang Ming's declaratory relief claim is not warranted.*

Oceanbridge claims that no remedy of declaratory relief is possible because none

---

12. In Jun's declaration filed with this Court on February 24, 1999, Jun declares "under the laws of the United States of America and the State of California that the foregoing is true and correct." In Jun's declaration filed with this Court on January 26, 1999, Jun declares "under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct."

of the aforementioned claims may withstand this motion for summary judgment and, therefore, no actual controversy remains as between Yang Ming and Oceanbridge. Because of this Court's conclusion that Yang Ming's negligence claim, in part, and Yang Ming's negligent misrepresentation and fraud claims against Oceanbridge survive Oceanbridge's current summary judgment motion, summary judgment as to Yang Ming's sixth remedial claim for declaratory relief is also denied.

### 2. Oceanbridge's Motion for Summary Judgment as against Laufer is denied.

■ Finally, Oceanbridge seeks summary judgment as against Laufer such that, in the event that Laufer must indemnify Yang Ming for damages under the Yang Ming/Laufer Bill of Lading, Laufer cannot seek indemnification from Oceanbridge.

Oceanbridge directs this Court to *F.J. Walker, Ltd. v. Motor Vessel "Lemoncore"*, 561 F.2d 1138 (5th Cir.1977) to support its argument that it is not required to indemnify Laufer for any damages which may be awarded to Yang Ming, as carrier. Oceanbridge's reliance on *F.J. Walker* is completely inapposite. In *F.J. Walker*, a carrier was found liable for damages which occurred after a portion of a shipment of frozen meat thawed and spoiled during unloading and delivery because it unloaded the cargo on an "unfit" dock under the Harter Act. *Id.* at 1141–42. The carrier, in turn, sought indemnity from its stevedore because the meat was improperly refrigerated after it was unloaded. *Id.* at 1147–48. The court concluded that the key issue, which needed to be resolved on remand, was whether the stevedore timely notified the carrier of the refrigeration problem so as to put the carrier on notice that loading should be halted. *Id.* at 1148. Oceanbridge relies on the court's statement that "if such a breach [by the stevedore] is not an operative factor in the damages that occur, or if conduct on the part of the shipowner causes the injury ... indemnity

should be denied." *Id.* Oceanbridge misinterprets the court by suggesting that this statement forecloses Laufer's indemnity claim because Laufer has already been found liable to Yang Ming. This Court is of the opinion that its previous ruling on the issue of liability as to Laufer under the Yang Ming/Laufer Bill of Lading does not bar the possibility that other "operative factors" caused Laufer's liability position. Under the present facts, Laufer's actions were not akin to the only "operative factors" of Yang Ming's injury. Instead, the chain of events related back to the initial bills of lading between G.E. and Oceanbridge. This is precisely what is contemplated by *F.J. Walker*.

■ Laufer presently claims that it is entitled to indemnity against Oceanbridge under the theories of equitable indemnity and contractual indemnity. Under equitable indemnity, "[a] party who is not at fault but nonetheless is held liable by reason of its relationship to another ... may seek equitable indemnity." However, under admiralty law principals, " 'indemnification is not available unless the indemnitor could be held directly liable to the person injured." Oceanbridge contends that Yang Ming cannot hold Oceanbridge directly liable for damages due to the misdescription of the Laufer Containers in the Yang Ming/Laufer Bill of Lading, preventing Laufer's equitable indemnity claim. This Court disagrees.

As noted above, this action in regards to the Laufer Containers posits a novel scenario to this Court. It is customary for an original shipper to engage a NVOCC to arrange for transportation of a shipment. That NVOCC issues a bill of lading to the shipper and, in turn, secures an ocean carrier who issues a second bill of lading designating the NVOCC as the shipper. The case law easily supports the notion that an NVOCC is considered a common carrier with respect to the shipper, but on the other hand is considered shipper with respect to the ocean common carrier. *See Insurance Co. of North America v. M/V*

*OCEAN LINK,* 901 F.2d 934, 937 (11th Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991). This case presents an unusual set of facts, however, because there are multiple bills of lading at issue and multiple NVOCCs. This Court is not aware of any case authority which addresses how an NVOCC is to be treated with respect to another NVOCC on the theory of equitable indemnification. Therefore, in light of the prevailing notion in admiralty law to construe each bill of lading as a separate document, this Court concludes that under the present set of facts there is no direct liability under the bills of lading contracts themselves between Laufer and Oceanbridge because no bill of lading between these specific parties was exchanged. This Court permitted Yang Ming's fraud claim as against Oceanbridge to survive Oceanbridge's motion for summary judgment. Thus to the extent that Yang Ming has a direct cause of action against Oceanbridge for fraud, Laufer's equitable indemnity claim against Oceanbridge appears to be proper.

 Moreover, courts have generally recognized that under tort principles, "a passively negligent party in admiralty can recover indemnity damages from a primary negligent party." *SPM Corp. v. M/V MING MOON,* 22 F.3d 523 (3rd Cir. 1994). For example, a NVOCC, as shipper with respect to a carrier, could be equitably indemnified by the ocean carrier for the carrier's primary or active negligence in losing a customer's cargo at sea. Id. at 526. It could be argued that Laufer is interposed between the real parties in interest—Oceanbridge and Yang Ming—rendering Laufer a passively negligent party compared to Oceanbridge. On the other hand, it could be argued that Oceanbridge is a passively negligent party and the real parties in interest are G.E. and Yang Ming. However, due to the evidentiary disputes referenced above, this conclusion cannot be reached today and, as a matter of law, summary judgment in favor of Oce-

anbridge on the theory of equitable indemnification is not justified.

Regarding Laufer's implied contractual indemnity argument, this Court agrees with Oceanbridge that this argument is improper. In its Cross–Claim filed on January 5, 1998, Laufer alleged only one claim against Oceanbridge—Equitable Indemnity. Thus Laufer is precluded from asserting an additional claim at this time.

### Conclusion

Based on the above discussion, this Court

1. **DENIES** Third–Party Plaintiff Laufer Freight Lines, Ltd.'s Motion for Reconsideration;

2. **GRANTS IN PART AND DENIES IN PART** Defendant Oceanbridge Shipping International, Inc.'s Motion for Partial Summary Judgment Against Yang Ming Marine Transport Corporation; and

3. **DENIES** Defendant Oceanbridge Shipping International, Inc.'s Motion for Summary Judgment Against Laufer Freight Lines, Ltd.

IT IS SO ORDERED.